**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

In re:

C.D. JONES & COMPANY, INC.    CASE NO.:  09- 31595-KKS
                              CHAPTER:  7

   Debtor.
_____/

MEMORANDUM OPINION GRANTING TRUSTEE'S MOTION TO COMPEL DISCLO-
SURE (DOC. 163) AND MOTION FOR DETERMINATION OF CAUSE OF ACTION AS AN
ASSET OF THE ESTATE (DOC. 164)

      The Chapter 7 Trustee and the largest unsecured creditor, Thomas and Adele Daake (the "Daakes") are fighting over which of them can pursue and collect on claims against third parties. The Daakes, who have been trying to collect a $5 - $6 million claim against the Debtor for years, recently filed a state court law suit against third parties (one, a former insider of the Debtor) and want to keep the proceeds of any recovery for themselves.  The Trustee wants to bring any recovery into the bankruptcy estate for distribution to all unsecured creditors.  The defendants in the suit filed by the Daakes just want everyone to go away.

      The primary legal issue boils down to whether certain claims and causes of action the Daakes filed, or that may be filed, in state court constitute property of the bankruptcy estate.  A second issue is whether the Trustee has standing to pursue the state court claims or whether, as the Daakes assert, the Trustee no longer has standing because she did not take action to pursue any fraudulent transfer claims within the two years set forth in Section 546(a).  Finally, the Court must decide whether to order the Daakes to give the Trustee any information they have about any pending actions that relate to this bankruptcy case.

      The Court finds that any claims asserted in state court that belonged to the Debtor pre-petition are Section 541 property of the bankruptcy estate that the Chapter 7 Trustee has standing

1

to pursue. Any recovery from state court fraudulent transfer claims became property of the estate by virtue of Section 544(a) and the Trustee had exclusive standing to pursue such claims until the expiration of the limitations period of Section 546(a), at which point the Daakes also had standing to pursue such claims. Whether the Trustee no longer has standing to pursue fraudulent transfer claims is an issue for the state court to decide. Finally, under the facts of this case it is appropriate, and necessary, to grant the Trustee's motion to compel disclosure and require the Daakes and their counsel to provide the Trustee information about any pending actions that relate to this bankruptcy case.

## BACKGROUND

The Debtor, CD Jones & Company, Inc., is a Florida corporation formed in 1989. At some point in 2003 the Daakes entered into a business transaction with the Debtor; the Daakes contracted for the Debtor to perform certain construction for them in Escambia County, Florida. A dispute arose between the Debtor and the Daakes, and in 2004 the Daakes sued the Debtor for breach of contract, violation of certain building codes, and fraud. After costly and protracted litigation, including a jury trial, in July of 2009 the Daakes won a jury verdict against the Debtor in excess of five (5) million dollars, including $100,000.00 in punitive damages. Not surprisingly, the Debtor filed its Chapter 7 petition on July 30, 2009, after the jury verdict but before a Final Judgment was signed by the trial court.

The Daakes sought and were granted stay relief in order to obtain a final judgment and liquidate their claims against the Debtor for attorneys' fees and costs.[1] On October 1, 2009 the state court entered a Final Judgment for the Daakes against the Debtor in the amount of $5,196,706.67, which confirmed the Daakes as by far the Debtor's largest unsecured creditor.

---

[1] The Daakes also obtained relief to pursue other claims in the state court not directly related to the Debtor.

The Debtor's original founders, principals and co-owners were Dennis and Cynthia Jones. Sometime in 2006, during the heat of the litigation between the Daakes and the Debtor, Dennis and Cynthia Jones transferred their ownership interests in the Debtor to their son, Chris Jones, and a business associate, William Clay. Later, in April of 2007, the Debtor completed a transaction with William Clay and Chris Jones that resulted in Mr. Clay becoming the Debtor's sole remaining shareholder. At about the same time, the Debtor was sued by another creditor, Alcan Investments, LLC, for breach of contract, fraud, conspiracy to commit fraud, concealment, violations of the Interstate Land Sales Full Disclosure Act, and recovery of fraudulent transfers.

Sherry Chancellor was appointed Trustee of the Debtor's estate on July 31, 2009. The Trustee has not filed any adversary proceedings against the Debtor or others. On May 11, 2011, the Trustee filed an application to employ the Daakes' current counsel, then with another firm, to pursue and recover assets and avoidable transfers on behalf of the estate, but after a creditor objected the Trustee withdrew the application two days prior to the expiration of the Section 546(a) limitations period. The Daakes' counsel then filed emergency motions to either compel the Trustee to bring such avoidance actions or alternatively grant the Daakes permission to bring the actions. The Trustee objected to the motion to compel on the basis that the Daakes' attorneys had been "unresponsive" to her requests for information and "vague" as to the details of alleged fraudulent transfers. The Trustee concluded that by filing the motion to compel, the Daakes' counsel had placed itself in an "adversarial position with the Trustee which is not conducive to a healthy client-attorney relationship."[2] After a contested hearing on the motion to compel, this Court authorized the Daakes to bring a fraudulent transfer action on behalf of the Debtor's estate, which they did. That action, which was filed within the two-year period provided under Section 546 of the Code, remains pending.

---

[2] The attorney who filed the motion to compel has continued to represent the Daakes during this case, albeit with another law firm.

3

In June of 2012, after the expiration of the time provided under Section 546(a), but without notice to or consent by the Trustee, the Daakes filed a new law suit in state court against two people: one of the former owners of the Debtor, Dennis Jones, as Trustee, and April White, who is or was engaged to the Jones' son, Chris Jones. It is the claims and causes of action in this new law suit (the "Jones' Trust suit") that are at the heart of this dispute.

In the Jones' Trust suit, the Daakes allege that while Dennis and Cynthia Jones still owned their shares in the Debtor they 1) formed and caused the Debtor to pay for the formation of two trusts for which Dennis Jones became Trustee: The Dennis Jones Grantor Trust and the Cynthia Jones Grantor Trust (the "Jones' Trusts"); and 2) caused the Debtor to transfer to the Jones' Trusts and a third party, April White, certain valuable land and other assets.[3] In the Jones' Trust suit the Daakes seek two types of equitable relief on their own behalf and "for CD Jones [the Debtor]": imposition of a resulting trust and an equitable lien on the assets transferred to the defendants by the Debtor.[4]

To date, the Daakes are the only parties who have been willing (and able) to expend the time, money and effort to pursue claims thus far in this case.

PROCEDURAL POSTURE

Upon discovering that the Daakes had filed the Jones' Trust suit, the Chapter 7 Trustee filed a *Motion to Compel Disclosure*, seeking an order compelling the Daakes and their counsel to "make a full and complete disclosure, under penalty of perjury regarding any knowledge they may have of any pending litigation that involves the Debtor in this matter in any way shape or form."[5] The Trustee also filed a *Motion for Determination of Cause of Action as an Asset of the*

---

[3] Doc. No. 167, Exhibit A.
[4] Doc. No. 167, Exhibit A at 3-4.
[5] Doc. No. 163.

4

*Estate*[6], seeking a ruling from this Court that all claims and causes of action asserted in the Jones' Trust suit are assets of this Estate and that the Trustee has standing to pursue these claims (the "Trustee's motions"). The Trustee has not abandoned any interest in any asset or cause of action, the bankruptcy case remains open, and no assets have been "deemed abandoned" under Section 554.[7] This court reviewed all motions and memoranda of law submitted, heard argument of counsel for the Daakes, the Trustee and the Jones' Trust defendants on July 26, 2012, and took the matter under advisement.[8]

The Daakes rely primarily on the Illinois bankruptcy case of *Klingman v. Levinson*, 158 B.R. 109 (N.D. Ill. 1993) in support of their assertion that the Jones' Trust suit is essentially a fraudulent transfer claim that the Trustee could have brought under 11 U.S.C. §§ 544 and 548. They also cite *Klingman* for their position that because the deadline provided by 11 U.S.C. § 546 has passed, the Trustee's exclusive right to pursue fraudulent transfer claims has expired and the Daakes may now step in to pursue such claims for their own benefit.[9] The defendants in the Jones' Trust suit support the Trustee's motions.

## DISCUSSION

*I.    Are the claims and causes of action alleged in the Jones' Trust suit assets of the bankruptcy estate?*

*A.  Causes of action belonging to the Debtor*

The complaint the Daakes filed in the Jones' Trust suit does not allege any Fraudulent Transfer statute(s) as a basis for relief, nor does it allege "badges of fraud" or the most common

---

[6] Doc. No. 164.
[7] *Id*.
[8] The Daakes object to the standing of the Jones' Trust defendants to participate in this case, file memoranda of law and otherwise oppose or support the relief being requested. Although the Court permitted these defendants to submit a memorandum of law and legal argument, the Court does not rule on their standing to participate because such a ruling is not necessary to the outcome of this case.
[9] Doc. No. 167 at 4.

elements of claims for actual or constructive fraudulent transfers. Instead, in the Jones' Trust suit the Daakes seek imposition of an equitable lien on or equitable title to all assets transferred by the Debtor to the Jones' Trusts and April White under theories of unjust enrichment and resulting trust.

The Daakes brought the Jones' Trust suit on their own behalf, as creditors of the Debtor, and also on behalf of the Debtor.[10] An action assertable by the Debtor would unquestionably be Section 541 property of the estate. If the Jones' Trust suit is based on claims the Debtor could have brought, then those claims belong exclusively to the trustee. As this Court stated in footnote 2 of *In re Saunders,* 101 B.R. 303 (Bankr. N.D. Fla. 1989):

> The Court [in *MortgageAmerica*] held that the 'trust fund' or 'denuding the corporation' causes of action were rights of action belonging to the corporation under Texas law, thus those causes became property of the estate. While this is not before the Court in the instant case, we concur with that conclusion.

101 B.R. at 304 (referring to *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983)).

In a case involving facts similar to those here, *In re Xenerga, Inc.*, 449 B.R. 594 (Bankr. M.D. Fla. 2012), the Chapter 7 trustee sought approval to settle state-court claims asserted by the debtor's customers against insiders of the debtor. The trustee argued that the claims were "alter ego" claims belonging to all creditors generally and thus belonged to the bankruptcy estate.[11] In determining that the alter ego claims belonged to the corporation and thus the bankruptcy estate, the court turned to an Eleventh Circuit decision which held that an alter ego action is Section 541 property of the estate if the claim is common to all creditors and if state law allows the corporate entity to bring an alter ego action.[12] "[I]f the injury alleged…is an injury to the corporation and thus suffered generally by all creditors, and is not an injury inflicted directly on any one creditor,

---

[10] The complaint states that "CD Jones and the Plaintiffs as CD Jones' creditors" are "entitled to equitable title to the assets of the Jones' Trusts" and are entitled to record a *lis pendens* on the real property of the defendant, April White. The Daakes assert that the equitable remedies they are seeking in the Jones' Trust suit are remedies available under Florida's Uniform Fraudulent Transfer statute.
[11] *In re Xenerga, Inc.*, 449 B.R. at 598.
[12] *Id.* at 598 (citing *In re Icarus Holding, LLC*, 391 F.3d 1315, 1321 (11th Cir. 2004)).

6

the trustee has exclusive standing to bring such an alter ego action." *In re Xenerga*, at 598-99. The *Xenerga* court found that Florida law allows a corporate entity and hence the Chapter 7 trustee to bring an alter ego action against the debtor's principals if the corporation was manipulated specifically to injure the corporation's creditors.[13] As the court stated:

> [U]nder Florida law, an injured party may pierce the corporate veil if insiders abuse the corporate form and injure a party. Trustees who represent the interest of all unsecured creditors of a debtor corporation are in the best position to assert claims against abusive insiders who have harmed the general creditor body as a whole.

*Id.* at 599.

By filing the Jones' Trust suit, the Daakes, in a roundabout way, are going after the former owners of the Debtor by seeking equitable remedies against assets transferred to and held in the trusts of the former owners. The Florida Supreme Court has stated that a plaintiff, when asserting an alter ego claim, must show that a corporation was "organized…in some fashion that the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders, or…in general, that property belonging to the corporation can be traced into the hands of the stockholders."[14] This is essentially what the Daakes assert: their complaint alleges that assets of the Debtor were placed into the personal trusts of Dennis and Cynthia Jones, and transferred to April White, with no benefit going back to the Debtor. The injury the Daakes assert is common to all of the Debtor's creditors, not just to the Daakes specifically.

### B. Possible state law fraudulent transfer claims

The Trustee seeks a ruling that the claims asserted in the Jones' Trust suit constitute property of the bankruptcy estate that only she has standing to pursue, although the Trustee made no attempt to pursue the claims until the Jones' Trust suit was filed by the Daakes. The defend-

---

[13] *Id*. at 599-600.
[14] *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114,1120 (Fla. 1984) (quoting *Advertects, Inc. v. Sawyer Industries, Inc.*, 84 So.2d 21 (Fla.1955); *see also In re Xenerga, Inc.*, 449 B.R. at 599.

ants named in the Jones' Trust suit support the Trustee's position; apparently because they do not wish to be pursued by the Daakes and their lawyer any longer. The Daakes assert that the defendants' goal appears to be to escape liability under any theory. Realizing that if their claims could have been brought by the Debtor the Trustee is the only party with standing to pursue them, the Daakes now claim that the Jones' Trust suit is actually one seeking to set aside fraudulent transfers under Florida Statute 726, and is not property of the estate.

If the claims and causes of action in the Jones' Trust suit are, in reality, fraudulent transfer claims that would have been available to creditors pre-petition, this Court finds that the right to recover any such fraudulent transfers is property of the bankruptcy estate.

All parties cite *In re Saunders*, 101 B.R. 303 (Bankr. N.D. Fla. 1989) in support of their respective arguments. The Jones' Trust defendants cite *Saunders* in support of the Trustee's position that an action assertable by the Debtor is property of the estate that only she has standing to pursue, and the Daakes cite *Saunders* in support of their argument that a state law fraudulent transfer action is not property of the estate because it is not an action assertable by the Debtor. In *Saunders,* a creditor sued four other entities under Florida's (then) Fraudulent Transfer statute (F.S. § 56.29). The issue before the Court in *Saunders* was whether the creditor's fraudulent transfer action was stayed under 11 U.S.C. § 362(a)(3).[15] The only discussion in *Saunders* of whether a fraudulent transfer cause of action (as opposed to the property transferred) was property of the estate was with regard to Section 541. Although the *Saunders* case did not involve whether causes of action come into the estate by virtue of Section 544, this Court recognized in *Saunders* that fraudulent transfer claims can be asserted by a creditor "or by a trustee in bankruptcy" by virtue of the trustee's avoidance powers under Sections 544 and 548.[16]

---

[15] Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."
[16] *Saunders*, 101 B.R. at 305.

In a case dealing squarely with the issue, the Bankruptcy Court for the Southern District of Florida has ruled that state court fraudulent transfer claims constitute property of the estate. *In re Zwirn,* 362 B.R. 536 (Bankr. S.D. Fla. 2007). In *Zwirn*, a judgment creditor filed a fraudulent transfer claim against third parties in state court seeking to recover property that the Debtor had fraudulently conveyed pre-petition.[17] After the debtor filed a Chapter 7 petition, the trustee noticed a settlement of the trustee's Section 548 claims and the judgment creditor's fraudulent transfer claims; the creditor objected. The trustee in *Zwirn* asserted that the creditor's state court fraudulent transfer claims were Section 541 property of the bankruptcy estate that the trustee had power to administer and settle.[18] Chief Bankruptcy Judge A. Jay Cristol analyzed the diverging case law on this issue, including this Court's ruling in *Saunders*, and concluded:

> [T]he better, well-reasoned approach is to conclude that such claims are property of the estate as of the petition date, and that they are solely within the power of a bankruptcy trustee to commence and prosecute under the facts of this case. Pursuant to 11 U.S.C. § 541 and its broad definition of property of the estate, fraudulent conveyance claims are property of the estate that with rare exception may *only* be prosecuted by the trustee.

*In re Zwirn,* 362 at 539 (citations omitted).

*Zwirn* and *Saunders* reached different conclusions as to whether state law fraudulent transfer claims are Section 541 property of the estate, but the result in both cases is the same: the trustee has the right to pursue state law fraudulent transfer claims by virtue of the operation of Section 544.[19]

---

[17] *Zwirn*, 362 B.R. at 537.
[18] *Id.* at 538.
[19] While all courts seem to agree that fraudulent transfer recoveries are assets of the estate to which the trustee is entitled under Section 544, there is a split of opinion as to whether the fraudulent transfer claims and fraudulently transferred property pre-recovery are assets of the estate as a result of Section 541. *See Zwirn,* 362 B.R. at 539. In *Saunders*, this Court ruled that the property fraudulently transferred is not property of the estate under Section 541 until after it is recovered, but that is not the question here. Other courts, including *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983), have ruled that property fraudulently transferred is property of the estate as of the petition date because, according to them, the debtor retains an equitable interest in the property after it is transferred.

Cases addressing whether state law fraudulent transfer claims constitute Section 541 property of the estate seem to blur the distinction between: 1) the fraudulently transferred *asset*, and 2) the *cause of action* for recovery of a fraudulently transferred asset. Here, the question is whether the cause of action to pursue state court fraudulent transfer claims is an asset of this estate. In ruling that it is, this Court concurs with the result in *Zwirn* and the reasoning in *In re Moore*, 608 F.3d 253 (5th Cir. 2010), which held that fraudulent transfer claims "become estate property once bankruptcy is under way by virtue of the trustee's successor rights under § 544(b)." 608 F.3d at 261 (citations omitted).[20]

The issue in *Moore* was whether the trustee had the ability to sell fraudulent transfer causes of action to estate creditors. The *Moore* court found that Section 541(a)(1) is not the only provision under which property may become property of the estate; although that section brings in most of the estate's assets, the trustee's avoidance powers under Section 544 allow the trustee to enlarge the property of the estate after the commencement of the case.[21] That court said: "The relationship between property of the estate under § 541 and the strong arm powers of [§ 544] is one of the most important and least appreciated in all of bankruptcy law…Too often lawyers focus exclusively on § 541 and forget that § 544 does much of the work."[22] Section 544 allows a trustee, on behalf of all estate creditors, to step into the shoes of any actual, unsecured creditor to avoid the debtor's fraudulent transfers if such creditor could reach the transferred property on the date of bankruptcy. The Fifth Circuit held that it is "well established" that a claim for fraudulent conveyance is included within estate property because the right to recover a

---

[20] The Court will address whether the trustee has standing to pursue these claims later in this opinion.
[21] *Id.* at 260 (citing Douglas G. Baird, Elements of Bankruptcy 125 (4th Ed.).
[22] *In re Moore*, 608 F.3d at 260 (quoting DOUGLAS G. BAIRD, ELEMENTS OF BANKRUPTCY 125 (4th ed. 2006)).

fraudulent conveyance, which would be invoked by a creditor outside of bankruptcy, is property of the estate only a trustee may pursue once a bankruptcy is commenced.[23]

> Central to this bankruptcy is the trustee's power under §544(b), which allows him to succeed to the actual, allowable and unsecured claims of the estate's creditors. *See* 11 U.S.C. §544(b). If an actual, unsecured creditor can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party, the trustee may use §544(b) to step into the shoes of that creditor and "avoid" the debtor's transfer.

*In re Moore,* 608 F.3d at 260.

In ruling that the trustee could sell a creditor's fraudulent transfer claim under Section 363(b) of the Code as property of the estate, the Fifth Circuit Court of Appeals stated that "[a]llowing a trustee to sell § 544(b) rights of action is in accord with the trustee's existing powers." *Id.* at 261.[24]

This Court agrees that creditors' fraudulent transfer claims belong to the Trustee under the strong-arm powers of Section 544 and are property of the estate once the case is filed. As the *Moore* court concluded:

> [T]he fraudulent-transfer claims are property of the estate under § 541(a)(1) …. In the alternative, the fraudulent-transfer claims became estate property under §544(b) ….[25]

Without question, the Daakes hold a claim "that is allowable under section 502" and the property that the Daakes are going after in the Jones' Trust suit was "an interest of the debtor in property" within the meaning of Section 544(b)(1), which reads:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a credi-

---

[23] *Id.* at 261.
[24] *See also Morley v. Ontos, Inc. (In re Ontos, Inc.),* 478 F.3d 427, 431 (1st Cir. 2007); *and Nat'l Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705, 708-09 (7th Cir. 2004).
[25] In *Saunders* this Court recognized that fraudulent transfer claims belonging to creditors pre-petition can be asserted by a trustee in bankruptcy, and that the trustee's right to do so "flows … from his avoidance powers under §§544 and 548." *Id.* at 305. To that extent, *Saunders* is entirely consistent with the ruling in the instant case and with the result in *Moore*.

11

tor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).

If the claims asserted in the Jones' Trust suit are, in fact, fraudulent transfer claims, then such claims are, or became, property of the estate and, as this Court stated in *Saunders*,

> The Trustee should have the benefit of that litigation thus greatly reducing the expense of recovering the assets for the estate and thus increasing the amount available for distribution to creditors… [A]ll creditors … are entitled to share in the benefits of any property which may have been fraudulently conveyed by the debtor.

101 B.R. at 306.[26]

The bankruptcy court in *Zwirn*, finding that both the fraudulently transferred property and the fraudulent transfer action were property of the estate, addressed the policy concerns of conferring "blank check" standing on creditors to pursue their own avoidance actions:

> ***This result also does the most to further the fundamental bankruptcy policy of equitable distribution among creditors.*** See In re Conley, 159 B.R. 323 (Bankr. D. Idaho 1993) ("These avoidance powers are for the benefit of the estate ...."); *see also, United Jersey Bank bv. Morgan Guaranty Trust Co. (In re Prime Motor Inns, Inc.),* 135 B.R. 917, 920 (Bankr. S.D. Fla. 1992) ("To grant individual creditors … the right to prosecute avoidance actions … would unfairly enable individual creditors to pursue their own parochial or insular interests, to the detriment of all other creditors."). An additional policy concern is the orderly administration of the bankruptcy estate. In re Harrold, 296 B.R. 868, 873 (Bankr. M.D. Fla. 1999).

*In re Zwirn,* 362 B. R. at 540-41. The court in *In re Pearlman,* quoting *Zwirn,* shared these concerns and stated: "Allowing individual creditors to pursue their own causes of action under state [or federal] law 'would interfere with this estate and with the equitable distribution scheme dependent upon it…Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served.'" *In re Pearlman*, 472 B.R. at 122.

---

[26] As another sister court has recently stated, "[i]ndeed, *only the trustee* can bring federal and state law fraudulent transfer actions to recover property for the bankrupt estate." *In re Pearlman, et. al.,* 472 B.R. 115, 121-22 (Bankr. M.D. Fla. 2012).

The Trustee's *Motion for Determination of Cause of Action an Asset of the Estate*[27] should be granted. If the claims filed by the Daakes in the Jones' Trust suit existed in favor of the Debtor pre-petition, which it appears that they did, then those claims constitute Section 541(a) property of the Estate.[28] If the claims in the Jones' Trust suit are, instead, fraudulent transfer claims that were available to the Daakes (and other creditors) under Florida law, then they constitute property of the Estate as of the date of the petition by virtue of 11 U.S.C. § 544 and any recovery of such claims constitutes property of the estate under Section 541.

    II.    *Does the Trustee have standing to pursue the claims and causes of action in the Jones' Trust suit?*

The Daakes assert that the Trustee no longer has standing to pursue the Jones' Trust suit because she did not do so within two years of her appointment, relying on the Illinois case of *Klingman v. Levinson*, 158 B.R. 109 (N.D. Ill. 1993). The Daakes' reliance on *Klingman* is misplaced. Section 546(a)(1) provides that the exclusive time within which a trustee may file an action under, *inter alia*, Sections 544 and 548 is not later than 2 years after the entry of the order for relief. 11 U.S.C. § 546(a). If the Jones' Trust suit is determined to be a fraudulent transfer claim, as the Daakes allege, then under *Klingman* the Trustee's *exclusive* right to bring the action expired in 2011, but that does not mean that the Trustee has lost standing. It simply means that a creditor, here the Daakes, also has standing to pursue the action.

The Section 546 time limitation is not a jurisdictional bar to the Trustee asserting fraudulent conveyance claims; rather it is an affirmative defense available to the fraudulent transfer defendants to be raised in the state court in the event that the Trustee seeks to proceed. *See In re*

---

[27] Doc. No. 164.
[28] Section 541(a) includes, as property of the estate, "all legal and equitable interests of the debtor in property as of the commencement of the case."

*Zwirn*, 362 B.R. at 541.[29] The *Klingman* court did not rule that once the two year limitation under Section 546(a) has expired the trustee loses any right to pursue fraudulent transfer claims; rather, that court held that once the two years expires the trustee loses the "exclusive" right to pursue such claims:

> [T]he commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets *to the exclusion of all creditors.* 11 U.S.C. §546(a). However, the trustee does not retain this *exclusive* right in perpetuity. The trustee's *exclusive* right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) ….

*In re Klingman,* 158 B.R. at 113 (emphasis added).[30]

Of course, *Klingman* and Section 546(a) only apply if the Jones' Trust suit asserts state law fraudulent transfer claims. *Klingman* involved a claim that was, without question, based on state fraudulent transfer law. Here, it is not yet clear what types of claims and causes of action are pending or may be brought against the Jones' Trust defendants. For that reason alone, *Klingman* is distinguishable. If the claims and causes of action in the Jones' Trust suit are not fraudulent transfer claims, but rather are claims that belonged to the Debtor pre-petition, then the Section 546(a) limitation does not apply. Rather, the Trustee would be pursuing Section 541(a)(1) property of the estate pursuant to Section 704(a)(1), which she is mandated to do. "Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *In Larkin,* 468 B.R. 431 (Bankr. S.D. Fla. 2012) (quoting *Parker v. Wendy's Int'l., Inc.,* 365 F.3d 1268, 1272 (11th Cir. 2004)).

---

[29] Addressing the argument that the trustee had no standing to prosecute fraudulent transfer claims, the court in *Zwirn* responded, "statute of limitations are not jurisdictional, but are merely affirmative defenses which, if not raised, can be waived."

[30] See also footnote 2 in *Klingman,* where that court acknowledged that, unlike here, "this case does not implicate the bankruptcy policies of orderly liquidation and equality among creditors.

The Trustee has standing to appear in the Jones' Trust suit and to pursue any claims that belonged to the Debtor as of the date of the bankruptcy petition. If the state court determines that the claims in the Jones' Trust suit are fraudulent transfer claims, then the Trustee may not have standing to pursue such claims due to the expiration of the limitation period of Section 546(a), but that is an issue to be determined in state court.[31]

### III. Should the Daakes be compelled to provide the Trustee with information on any pending claims that relate to the bankruptcy estate?

The Daakes assert that "the Chapter 7 Trustee chose not to pursue any avoidance actions or seek recovery of any assets of CD Jones in the hands of third parties," and that therefore such actions or claims are "deemed abandoned" under Section 554 and may be pursued by the Daakes.[32] The Trustee disagrees with these allegations.

One of the purposes of the Chapter 7 Trustee is to "objectively evaluate the entire estate and to bring only those actions which are viable, cost effective and will benefit the estate."[33] The issue as to whether the Trustee may be time barred from pursuing the Jones' Trust suit is different from whether any recovery from that action (or any others that may exist) should inure to the benefit of all of the creditors, rather than just the Daakes. Even if the state court rules that the Jones' Trust suit is one for fraudulent transfers, and even if that court rules that that the Trustee no longer has standing to pursue that action, any recovery from that action (and any others) must inure to the benefit of all of the creditors of this estate.

Simply because the Daakes believe in their cause does not mean that pursuing the Jones' Trust suit is in the best interests of this estate. Whatever has transpired during this case, the re-

---

[31] The Trustee's position is that the two year limitation under Section 546 may not have run if she did not know the fraudulent transfer action existed. This argument can also be raised in the state court.
[32] Doc. No. 167-1.
[33] *In re Zwirn,* 362 B.R. at 541.

sult is that the Trustee has developed a mistrust of counsel for the Daakes, and possibly the Daakes themselves. While at first the Trustee apparently took the validity of the Jones' Trust suit at face value, it now appears that the trustee is attempting to do her own independent analysis of the benefits and possible burdens of pursuing that suit. The Trustee has gone from seeking to retain the Daakes' counsel to represent her to arguing against the Daakes pursuing a different fraudulent transfer claim against another party, and moving to compel the Daakes and their counsel to disclose information.

In her *Motion to Compel Disclosure*, the Trustee requests "that the Daakes and their counsel provide a verified statement to the Trustee and this Court regarding any pending actions that relate to the above referenced bankruptcy estate." In their response to the Trustee's motion to compel, the Daakes do not deny having any such information; they merely state that they are "not aware of any legal basis that [the trustee] would have for requiring that the information sought be turned over to her."

Based on the facts in this case and the history between the parties, the Trustee's *Motion to Compel Disclosure*[34] should be granted. Section 704(a) (1) and (a)(4) require the Trustee to "collect and reduce to money the property of the estate for which the trustee serves" and to "investigate the financial affairs of the debtor." 11 U.S.C. §§ 704(a)(1) and (a)(4). The Daakes have been litigating against this Debtor since 2004; the Trustee was appointed in 2009. It is likely that the Daakes have more knowledge of the Debtor and its business affairs than the Trustee. The Trustee's request for information about any "pending actions that relate to" this bankruptcy estate is reasonable and the legal basis for her request is founded in Section 704. It is unusual, to say the least, to see a Trustee moving to compel information from the very attorney(s) that she initially intended to hire. It is obvious from the pleadings that the Trustee, the Daakes and their

---

[34] Doc. No. 163.

16

attorney remain totally at odds. For that reason, it appears that an order compelling the Daakes and their counsel to provide the requested information may be the only way to ensure that these parties communicate.

## CONCLUSION

It is ultimately up to the Escambia County Circuit Court to decide whether the causes of action the Daakes are asserting in the Jones' Trust suit are fraudulent transfer claims that belonged to creditors or whether they are causes of action that belonged to the Debtor. Regardless, the claims and causes of action asserted in the Jones' Trust suit constitute property of the bankruptcy estate and any recovery from them shall inure to the benefit of all creditors. If there are other pending actions that relate to this bankruptcy estate of which the Daakes have knowledge, then once that information is provided to the Trustee she can decide whether to pursue those actions.

This case has been pending since 2009. If the Trustee elects to pursue the Jones' Trust suit, then she will need to decide fairly quickly whether to retain the Daakes' counsel, or separate counsel, to represent her. If the Trustee decides not to pursue the Jones' Trust suit, then the Daakes are entitled to have her either abandon any interest in the claims asserted in that suit or authorize them to pursue the suit for the benefit of this estate.

The Court will enter separate orders consistent with this opinion.

DONE and ORDERED in Tallahassee, Florida this 5th day of November, 2012.

KAREN K. SPECIE
United States Bankruptcy Judge

cc: all parties in interest