**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

In re:

C.D. JONES & COMPANY, INC.,            CASE NO.:  09-31595-KKS
                                       CHAPTER:  7

    Debtor.
_____/

**MEMORANDUM OPINION IN SUPPORT OF *ORDER***
***(1) GRANTING THOMAS AND ADELE DAAKE'S MOTION FOR SUMMARY JUDGMENT ON OBJECTION TO AMENDED CLAIM OF 331 PARTNERS, LLC (CLAIM # 48-2) (Doc. 670),***
***(2) DENYING MOTION OF 331 PARTNERS, LLC FOR SUMMARY JUDGMENT ON AMENDED CLAIM (Doc. 669), AND***
***(3) SUSTAINING DAAKES' OBJECTION TO AMENDED CLAIM OF 331 PARTNERS, LLC (Claim # 48-2)*** **(DOC. 394)**

THIS MATTER is before the Court on competing motions for summary judgment filed by Thomas and Adele Daake and 331 Partners, LLC.  (Docs. 669 and 670.)  For the reasons stated below, and as set forth in the Order entered on October 14, 2016 (Doc. 678), the Daakes' motion is granted, the 331 Partners' motion is denied, and the Daakes' objection to 331 Partners' amended claim (Doc. 394) is once again SUSTAINED.

The Debtor filed its Chapter 7 petition on July 30, 2009.  331 Partners filed its original claim on December 4, 2009.  In that claim, 331 Partners set forth the unsecured portion of its claim as $1,684,765.38. (Claim 48-1.)  More than five years

later, on January 16, 2015, 331 Partners filed an amended claim changing, for the first time in the case, the amount of its unsecured claim to $9,181,151.88. (Claim 48-2.)

The Daakes filed their objection to 331 Partners' amended claim on February 12, 2015. (Doc. 394.) They argued, essentially, that the amended claim was filed too late and prejudiced them because at their own expense they had taken significant legal action to collect money into the estate. They have testified and their attorneys have represented that they did so partly in reliance on the amount of 331 Partners' original unsecured claim. After briefing and oral argument, on May 26, 2015, the Court entered an order sustaining the Daakes' objection to 331 Partners' amended claim. (Doc. 472.) As stated in that Order, 331 Partners' amended claim, filed only after the Trustee had negotiated a settlement that would bring $250,000 cash in to this bankruptcy estate, was disallowed.[1]

After the Daakes' objection to 331 Partners' amended claim was sustained, the Trustee and others discovered that since filing their initial proof of claim on October 20, 2009, the Daakes had recovered more than $1.4 million from third parties. The Daakes had not advised the Trustee of these recoveries or amended their claim. Upon this discovery the Trustee filed an objection to the Daakes' claim. Ultimately the Daakes, by stipulation, filed an amended claim in the amount of

---

[1] The Daakes vehemently opposed the Trustee's settlement.

$4,678,603.03; their original claim was for $6,127,273.01.  (*See* Claim 41-1, 41-2 and Doc. 504.)

In their objection to the 331 Partners claim and in their arguments in support of that objection, the Daakes asserted repeatedly that they held "by far" the largest unsecured claim in the estate.  Apparently, the Daakes made this argument after they had recovered almost $1.4 million from third parties.

On October 23, 2015, 331 Partners filed a motion to reconsider the order sustaining the Daakes' objection to its amended claim.  331 Partners argued, in essence, that the disallowance of its amended claim was based in large part on the Daakes' assertions that they were by far the largest unsecured creditors in this case. (Doc. 539.)  Because the Daakes had not revealed the true amount of their unsecured claim, 331 Partners argued, the Court did not have all the facts when it made its ruling.  The Court granted 331 Partners' motion to reconsider.  (Doc. 574.)  The Daakes' objection to 331 Partners' amended claim was again set for hearing, and the parties' motions for summary judgment followed.

Pursuant to Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  There are no genuine disputes as to any material fact pertaining to the Daakes' objection or 331 Partners' amended claim.  The fact that the Daakes'

unsecured claim is less than the amount represented when the Court made its original ruling does not shift the equities sufficiently to justify a ruling that allows 331 Partners' amended claim as timely. The Daakes are entitled to summary judgment in their favor as a matter of law. This Court's prior ruling—sustaining the Daakes' objection to 331 Partners' amended claim—is confirmed.[2]

The Daakes' testimony and their counsel's assertions that they would not have prosecuted the adversary proceeding (AP 11-03045) that resulted in the $250,000 settlement had they been on notice that 331 Partners' unsecured claim was $9 million instead of $1.6 million are unrefuted. The Daakes' claim, while reduced by a substantial amount, still represents the majority of the unsecured debt in this case, at least when compared to 331 Partners' original claim. 331 Partners' filing of an amended unsecured claim five years after the claims bar date, under the facts here, is too late.

331 Partners had several opportunities to amend its claim years before January 16, 2015. In fact, it appears that 331 Partners knew or should have known from this case's inception that the collateral securing the "Houses Note" portion of its claim had no, or very little value. William Clay signed the Petition and Schedules on behalf of the Debtor, as its President. At that time Mr. Clay was a one-third owner

---

[2] The prior ruling is confirmed with one difference. The original order sustaining the Daakes' objection to 331 Partners' amended claim disallowed the amended claim in its entirety. This order allows the original amount of the 331 Partners' unsecured claim as a timely unsecured claim, and allows the remainder of the 331 Partners unsecured claim as a late claim.

of 331 Partners. (Doc. 655.) 331 Partners' claim was evidenced, in part, by a promissory note ("Houses Note") that listed as collateral an "Assignment of Purchase Documents," comprised of contracts for the construction of homes in a subdivision called Villa Lago. (Claim 48-1, part 7.) The Debtor listed the value of the collateral for the Houses Note at $0 on its Schedule D.[3] Why Mr. Clay listed the collateral value at zero on the Debtor's schedules at almost the same time that 331 Partners filed a claim listing that exact collateral as being worth $7.5 million remains a mystery.

Shortly after the Debtor filed its Chapter 7 petition 331 Partners sought and received stay relief to complete a foreclosure on the real property that secured payment of the "Lot Sales Note." (Doc. 9.) The Order granting 331 Partners' motion for relief from the automatic stay was entered on September 10, 2009. (Doc. 45.) In its stay relief motion, 331 Partners discussed the Houses Note, and the fact that it was in default, but did not seek relief to pursue the collateral for that note. Its reasoning is obvious: Mr. Clay testified in a deposition that the Debtor filed bankruptcy because "there was no business" and "it was the cheapest way to wind the company down." (Doc. 201-2, pp. 5-6.) A workout agreement entered into by Mr. Clay, the Debtor and 331 Partners shortly before the Debtor filed bankruptcy called for the Debtor to finish construction on the infrastructure for the Villa Lago

---

[3] Doc. 1, p. 15.

subdivision. Once the Debtor stopped doing business it was unable to complete the infrastructure. Without that subdivision being complete, and with the Debtor out of business, all parties concerned knew that it would not be possible for the Debtor to construct more homes.

According to Mr. Clay, before filing its Chapter 7 petition the Debtor informed 331 Partners that it was going to file bankruptcy, and 331 Partners "took exception to it." (*Id.*) That testimony makes it clear that as of at least July 2009, 331 Partners knew that the Debtor was not capable of building more houses in Villa Lago, or at least had no intention to do so. If the Debtor built no houses, the collateral for the Houses Note—the house contracts—would be worthless. By the claims bar date, 331 Partners was clearly in a better position to know that the Houses Note collateral was worthless than were the Daakes.

331 Partners' only justification for filing its amended claim so long after the claims bar date is that it did not realize until the Trustee filed a "final report" on July 25, 2013 that only the denominated unsecured portion of its claim would be paid. (Doc. 669, p. 9.)[4] 331 Partners received notice of and did not object to the Trustee's "final report." It still did not file an amended claim at that time. 331 Partners waited until January 16, 2015 to file its amended claim. Meanwhile, the Daakes continued

---

[4] The final report correctly provided for a dividend to 331 Partners based on the unsecured portion of its original claim. (Doc. 309.)

6

to pursue recovery of assets for themselves and on behalf of the estate. Beginning in October of 2014, 331 Partners joined with the Trustee and the other settling parties to request approval of a "global settlement." (Docs. 352 & 374.)[5]  331 Partners knew with relative certainty prior to October 30, 2014 that $250,000 would come into the estate, yet still it did not file an amended claim.

331 Partners argues that the Trustee, and therefore the Daakes, should have discovered long ago that there was not $7.5 million of collateral securing its claim, stating: "if the Trustee in this case was operating with typical autonomy… she would have objected to the 331 Partners claim as a secured claim since she obviously did not have $7.5 million in assets for it to attach to." (Doc. 669, p. 11.) This argument makes no sense. Commonly, trustees have no incentive to object to a party's secured claim unless they intend to administer the collateral and recover money for the estate. 331 Partners' original proof of claim, coupled with the information on the Debtor's Schedules, showed that there was no equity in the items listed as collateral for the Houses Note. Even if that collateral had been worth $7.5 million on the date of the petition, there was no reason for the Trustee to object to 331 Partners' secured claim, because there was no equity. Further, the Debtor would have had to perform additional construction work in order to realize any value over

---

[5] The hearing to approve the amended settlement motion was held on February 25, 2015, and the hearing on the original settlement motion was held on December 17, 2014. On December 16, 2014, 331 Partners filed a supplemental memorandum of law in support of the motion to approve the settlement. (Doc. 368.)

7

and above 331 Partners' filed secured claim. Here, there is not a scintilla of evidence that the Trustee ever considered attempting to administer contracts or cause the Debtor's estate to build houses.

331 Partners elected to file its original claim stating that the value of collateral was $7.5 million. It was not incumbent upon the Trustee or the Daakes to "discover" that the amount of 331 Partners' secured claim was wrong.[6] The fact is that 331 Partners did not choose to file an amended claim that increased the amount of its unsecured claim by almost 400% until after the Trustee negotiated a settlement that was to result in a recovery of $250,000 for the estate. 331 Partners points to no fact that indicates that the Daakes' failure to file an amended claim had anything whatsoever to do with its delay in amending its own claim. The fact that the Daakes did not amend their claim until they were forced to do so does not amount to the type of "unclean hands" that would permit 331 Partners' amended claim to be allowed so late. Although the Daakes' failure to amend their claim once they received payment from other sources did not improve their appearance to the Court or the parties, it does not change the fact that they funded litigation that ultimately resulted in the primary asset in this estate.

---

[6] Further, on December 4, 2012, the Daakes did, in fact, object to 331 Partners' original claim. 331 Partners did not file an amended claim, even in response to that objection.

Contrary to 331 Partners' other argument, the fact that the Debtor listed the value of the collateral for the Houses Note as having no value was not sufficient to have put the Daakes, the Trustee or other creditors on notice that a future amendment of the 331 Partners claim was likely. The case law on which this Court originally sustained the Daakes' objection to 331 Partners' amended claim remains controlling.[7] The reasoning behind that ruling remains sound. Allowing 331 Partners' amended claim would be unfairly prejudicial to the other creditors; the Daakes in particular.

For the reasons stated, it is

ORDERED:

1. The Daakes' objection to 331 Partners' amended claim (Doc. 394) is SUSTAINED.

2. 331 Partners' amended claim (Claim 48-2) is disallowed as a timely unsecured claim. The increased unsecured portion of 331 Partners' amended claim is allowed as a late-filed claim.

DONE AND ORDERED on  19th day of October, 2016             .

KAREN K. SPECIE
United States Bankruptcy Judge

cc: All interested parties

---

[7] Doc. 472.